IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TONY RANDOLPH MCCLOUD            :
                                 :
            Plaintiff,           :     CIVIL ACTION
                                 :
        v.                       :     No. 07-cv-0344
                                 :
UNITED PARCEL SERVICE, INC.,     :
                                 :
            Defendant.           :


**MEMORANDUM AND ORDER**

**Joyner, J.**                              **February 11, 2008**


        Presently before the Court is Defendant United Parcel
Services' ("UPS") Motion for Summary Judgment ("D. Mot.") (Doc.
No. 15), Plaintiff's Response ("P. Resp.") (Doc. No. 18),
Defendant's Reply ("D. Rep.") (Doc. No. 28), and Plaintiff's
Surreply ("P. Surrep.")(Doc. No. 29).  For the reasons set forth
below, the Court GRANTS Defendant's motion.


**I. BACKGROUND**

        Plaintiff Tony Randolph McCloud began employment with
Defendant, United Parcel Service (UPS) as a Handler at the
company's airport facility in Philadelphia in February, 1999.  He
was soon after promoted to an Associate Financial Analyst

1

position in the Finance Department.  In 2001, he was transferred
to his most recent position as an operations specialist in Unload
Flow Control at the company's airport facility.  He remained in
that position until September 20, 2003.

*The Traffic Cone Incident*

On September 20, 2003, Plaintiff brought a traffic cone to
his supervisor, Tony Sarasini, on which someone had written "Tony
Mc Sucks Dick Ass Hole" and the letters "N-e-g."  Plaintiff
claimed he had found it on a ramp at the airport facility, and
Sarasini advised Plaintiff to report it to his manager, John
Fiorentino, and Plaintiff did so on September 23, 2003.  As a
result of Plaintiff's complaint about the offensive writing,
Victoria Marini Campbell, a UPS Workforce Planning Manager, and
Douglas MacQueen, a UPS security supervisor, began an
investigation into the incident.

As part of the investigation, over the course of the next
week Campbell and MacQueen interviewed all eighteen employees who
were known to be working on the airport ramp during or
immediately preceding the alleged discovery of the cone.  They
also asked each interviewed employee to provide a writing sample
which could be compared to the handwriting on the cone.  Notes
made by Campbell and MacQueen indicate that during the

interviews, a number of employees volunteered negative opinions about Plaintiff, and several opined that "anyone" could have made the writing because numerous people disliked him.  After the interviews, the handwriting samples were submitted to an outside expert forensic document examiner, who concluded that the handwriting on the samples did not match the handwriting on the cone.  UPS managers then decided that because there was insufficient evidence to support it, they could not punish any individual employee by termination, which was the pre-determined remedy.

In addition to the investigation, on September 24, 2003 - the day after Plaintiff's report to Fiorentino - Campbell instructed UPS supervisors to conduct a "Pre-work Communications Meeting" (PCM) with UPS employees before each shift.  According to Campbell, the supervisors - which included the supervisors of the two crews that were interviewed as part of the investigation - were instructed to inform employees that racial harassment and defacing UPS property by writing racial slurs would not be tolerated.  (D. Mot. Ex. C).

*Plaintiff's Disability Leave and Termination*

On September 21, 2003, citing stress and other related problems caused by or related to the traffic cone incident,

Plaintiff went on medical leave pursuant to UPS's Flexible
Benefits Plan ("the Benefits Plan"), which allows UPS employees
to take up to a twelve-month leave of absence.  As part of the
Benefits Plan, employees on medical leave are required to inform
UPS's insurance carrier if they are receiving income from other
employment, as disability benefits could then be offset by the
amount of that income.  Sometime before October, 2003, Plaintiff
made it known to Fiorentino that he had been working a second job
at Hertz, although he had not disclosed this on his disability
benefits application.  Fiorentino passed that information on to
Barbara Gohery, who was then UPS's regional Employee Relations
Manager for Philadelphia.

     In response, Gohery contacted Plaintiff on several occasions
and requested that he meet with her and Al Patano, the District
Human Resources Manager, to discuss his alleged outside
employment.  Plaintiff declined to do so, and on November 30,
2003, UPS suspended his benefits.  On December 15, 2003, Gohery
sent a letter to Plaintiff urging him to meet with her and Patano
to discuss his employment status.  Plaintiff again declined to do
so, but on December 29, 2003, UPS received a faxed letter from an
assistant at Hertz stating that Plaintiff was a Hertz employee
but had not worked there since July, 2003.  Contending that it
required confirmation from a manager, rather than an assistant,

4

UPS did not immediately reinstate Plaintiff's benefits and again requested confirmation of employment status.

On January 25, 2004, Gohery's replacement as Employee Relations Manager, Marvin Stewart, wrote to Plaintiff reminding him that his employment status needed to be verified before UPS could reinstate his benefits.  He explained that the Fair Credit Reporting Act (FCRA) required Plaintiff's consent before it could conduct further inquiry into his employment with Hertz.  Though Stewart enclosed a FCRA release form, Plaintiff did not sign and return it.

On February 5, 2004, UPS received documentation from a City Manager of Hertz confirming that Plaintiff was an active employee of Hertz, but had not worked there since July, 2003.  As a result, on February 11, 2004, UPS retroactively reinstated Plaintiff's benefits for the period covering December, 2003, and January and February, 2004 (the period since benefits were suspended on November 30, 2003).  UPS then mailed Plaintiff a check for the suspended benefits payments, as well as a letter explaining why there was a disruption in benefits.  Plaintiff continued to receive benefits under the Benefits Plan until September 20, 2004.

The Benefits Plan advises that if an employee is absent from employment on medical leave for more than twelve months, that

employee will be "administratively separated from employment." Plaintiff was informed on June 20, 2004 that he would be administratively terminated if he did not return to work before the expiration of his benefits on September 20, 2004.  Plaintiff did not return to work at that or any time, and was thus administratively terminated on September 27, 2004.

*This Lawsuit*

Plaintiff filed his initial complaint regarding the traffic cone incident on October 23, 2003 with the Philadelphia Human Relations Commission (PHRC), cross-filed with the Equal Employment Opportunity Commission (EEOC).  Plaintiff's second complaint, regarding the disruption in disability benefits, was filed on January 20, 2004 with the PHRC and EEOC.  On November 6, 2006, the EEOC issued a Notice of Right to Sue to Plaintiff, who filed his Complaint in this Court on January 26, 2007.  Plaintiff alleges that Defendant discriminated against him by creating a racially hostile work environment that led him to take medical leave and eventually be terminated, in violation of Title VII and the PHRA.  He also alleges that in suspending his disability benefits for a roughly three-month period, Defendant retaliated against him for filing his initial PHRC complaint.  Finally, Plaintiff alleges that Defendant violated a contract of

6

employment with him by failing to abide by its own anti-discrimination policies.

## II. STANDARD OF REVIEW

It is recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine only if there is sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 456 F.3d 418, 423 (3d Cir. 2006), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden." Id., quoting Wetzel v. Tucker, 139 F.3d 380, 383 n. 2 (3d Cir. 1998). In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that

7

party's favor.  See Bowers v. Nat'l Collegiate Athletic Ass'n,
475 F.3d 524, 535 (3d Cir. 2007).  However, there must be more
than a "mere scintilla" of evidence in support of the non-moving
party's position to survive the summary judgment stage.
Anderson, 477 U.S. at 252.


## III. DISCUSSION

Defendant moves for summary judgment on Plaintiff's claims
of both substantive discrimination and retaliation and breach of
contract.  We will address each in turn.  As an initial matter,
we note that we apply the same legal standard for claims of
discrimination and retaliation brought under the PHRA as we do
for claims brought under federal anti-discrimination laws
addressing the same subject matter.  See Kelly v. Drexel Univ.,
94 F.3d 102, 105 (3d Cir. 1996).  Thus, our analysis of, and
decision on, Plaintiff's hostile work environment claims under
Title VII apply equally to his claims under the PHRA, as they are
based on the same alleged conduct.[1]

_____

[1] Defendant asserts that Plaintiff's claims under the PHRA are time-
barred for failure to bring his suit within 90 days of the PHRC's decision on
his complaint.  However, although the Commission appears to have found No
Probable Cause for both complaints, neither a Right to Sue Notice from the
PHRC nor any document indicating that the PHRC closed its case appears in the
record, and thus we are unable to determine whether Plaintiff's claims are
time-barred under the PHRA.  In any event, Plaintiff's claims must be
dismissed on the merits, as we discuss below.

A.  Hostile Work Environment Claim

     Plaintiff first claims that the traffic cone incident,
Defendant's response to that incident, and the disruption in
Plaintiff's disability benefits are evidence of a hostile work
environment in violation of Title VII and the PHRA.  Title VII of
the Civil Rights Act of 1964 makes it unlawful for an employer
"to discriminate against any individual with respect to his
compensation, terms, conditions, or privileges of employment,
because of such individual's race, color, religion, sex, or
national origin."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff can
demonstrate a violation of Title VII by proving that sexual or
racial harassment created a hostile or abusive work environment.
See Meritor Sav. Bank v. Vinson, 477 U.S. 57, 66 (1986).  To
succeed on a hostile work environment claim, a Title VII
plaintiff must prove: (1) he suffered intentional discrimination
on the basis of race or sex; (2) the discrimination was severe or
pervasive;[2] (3) the discrimination detrimentally affected him;
(4) the discrimination would have detrimentally affected a
reasonable person in like circumstances; and (5) a basis for

_____

     [2] Third Circuit cases have phrased this element as requiring "pervasive
and regular" harassment.  The Third Circuit has acknowledged, however, that
the difference between its own formulation of this element and that of the
Supreme Court, which requires "severe *or* pervasive" harassment, is
significant, and that the latter must control.  See Jensen v. Potter, 435 F.3d
444, 449 n.3 (3d Cir. 2006), *overruled in part on other grounds by* Burlington
N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405 (2006).

employer liability, such as *respondeat superior*, exists.  <u>See</u> <u>Kunin v. Sears Roebuck & Co.</u>, 175 F.3d 289, 293 (3d Cir. 1999). Thus, the prima facie case requires that the objectionable environment be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787 (1998).

Defendant argues that the incidents cited by Plaintiff are not sufficiently "severe or pervasive" to meet the requirements of Title VII.  We agree.  In determining whether an environment is sufficiently hostile or abusive to support a claim of discrimination, we examine the totality of the circumstances, and consider such factors as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Id.</u> at 787-88; <u>see also</u> <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 426 (3d. Cir. 2001).  With these factors in mind, the incidents alleged by Plaintiff fall far short of what is required to be considered "severe and pervasive."  In essence, Plaintiff has only provided evidence of one instance of discriminatory conduct - that is, the traffic cone incident.  The Supreme Court has explained that "offhand comments and isolated incidents (unless

10

extremely serious)" are not sufficient to sustain a hostile work
environment claim.  The Third Circuit and this Court has
consistently applied that rule, and found that isolated, sporadic
incidents of racially or sexually charged comments do not
constitute "severe or pervasive" conduct that is actionable under
Title VII.  See, e.g., Page v. City of Pittsburgh, 114 Fed. Appx.
52, at *2 (3d Cir. 2004) (no hostile work environment where the
"allegations of discrimination were limited to a series of
isolated incidents" all occurring in one month); King v. City of
Phila., 66 Fed. Appx. 300, 305 (3d Cir. 2003) ("isolated and
sporadic incidents" not sufficient to "demonstrate the pervasive
atmosphere of harassment required to prove a Title VII
violation"); Drinkwater v. Union Carbide Corp., 904 F.2d 853, 863
(3d Cir. 1990) (two incidents of sexually stereotyped
discriminatory comments do not constitute pervasive
discrimination); Hartwell v. Lifetime Donors, Inc., No. 05-2115,
2006 WL 381685, at *11 (E.D. Pa. Feb. 16, 2006)(noting that while
a racial epithet is "morally repulsive, when it is used a single
time it is not sufficiently severe to show the existence of a
hostile work environment").  Plaintiff has produced no evidence
of any discriminatory conduct occurring before the traffic cone
incident, and the only alleged incident of "harassment" occurring
after that incident is the disruption in Plaintiff's disability

benefits.  Plaintiff has produced no evidence that his benefits were suspended in a discriminatory manner - i.e., that others in a similar situation were treated differently, or that he was subjected to offensive comments - and the suspension occurred several months after the traffic cone incident, with no alleged discriminatory conduct in between.  These incidents simply are not sufficiently "severe and pervasive" to amount to an "objectively hostile or abusive work environment,." Harris v. Forklift Sys., 510 U.S. 17, 21-22 (1993).[3]

Furthermore, we also agree with Defendant that there is no basis for liability as to UPS, because the company took immediate action to investigate and remedy Plaintiff's complaint about the traffic cone incident.  The Supreme Court has made clear that employers cannot be held liable for a hostile work environment created by their non-supervisory employees unless there is some basis for *respondeat superior* liability.  Meritor, 477 U.S. at

---

[3] Plaintiff's desperate attempt to make out a prima facie case based on the fact that during their interviews as part of Defendant's investigation of the traffic cone incident, several employees expressed that "no one likes" Plaintiff, who was their supervisor.  None of these comments were made in the presence of Plaintiff, and presented no evidence of discrimination or offensive comments or conduct whatsoever.  Plaintiff's attempt to categorize them as evidence of "hostility" ignores the focus of Title VII and the PHRA. As the Supreme Court has explained, Title VII is not a "general civility code," Faragher, 524 U.S. at 787, and employees' expressing to a third party that they disliked their co-worker, but without using discriminatory language to do so, is not so "extreme [as] to amount to a change in the terms and conditions of employment." Id.  Plaintiff's attempt to turn these comments into an insinuation that Defendant's investigation was actually an attempt to smear the Plaintiff's work record is a poor substitute for any actual development of the record or legal argument thereon.

70.  As the Third Circuit has instructed, to establish such liability, a Title VII plaintiff "must demonstrate that the employer failed to provide a reasonable avenue for complaint, or, if the employer was aware of the alleged harassment, that it failed to take appropriate remedial action."  Weston, 251 F.3d at 427.  An employer's investigation into a harassment complaint need not be perfect to meet this standard.  "Rather, to determine whether the remedial action was adequate, we must consider whether the action was reasonably calculated to prevent further harassment."  Knabe v. Boury Corp., 114 F.3d 407, 412 (3d Cir. 1997).

Here, UPS managers initiated their investigation into the traffic cone incident immediately - less than 24 hours after Plaintiff complained about it to his supervisor.  Two investigators then interviewed all eighteen employees who were assigned to the area in which the traffic cone was found.  They took handwriting samples from all of those employees and employed an outside handwriting expert to compare the samples to the handwriting on the cone.  The investigating team then compiled a written report about the investigation, and instructed UPS supervisors to meet with their employees at the beginning of the next shift and explain that this type of incident was not tolerable.  Although no employee was punished - purportedly due

13

to insufficient evidence - this is not a prerequisite to finding
that an employer's action was appropriate.  See id. at 409
(remedial action was adequate even though investigated employee
was not reprimanded).  We find that UPS's swift and thorough
investigation, followed by instructions to its supervisors to
talk to employees about the problem, was "reasonably calculated
to prevent further harassment," and thus constituted an adequate
remedial action as a matter of law.  See Wragg v. Comcast
Metrophone, 18 F. Supp. 2d 524, 528 (E.D. Pa. 1998) (immediate
interview of possible offenders, followed by written report and
reassignment of employee was adequate as a matter of law).
Therefore, no reasonable juror could find that there is a basis
for imposing liability on Defendant for an incident created by
one of Plaintiff's co-workers.

Accordingly, because the alleged incidents of discrimination
were not severe or pervasive, and because there is no basis for
imposing employer liability, Plaintiff has failed to establish a
prima facie case of hostile work environment under Title VII.
Defendant's Motion for Summary Judgment as to this claim is
GRANTED.

B.  Retaliation Claim

     Plaintiff also claims that when Defendant suspended his
disability benefits for a roughly three-month period, it
retaliated against him for filing his first PHRC complaint, in
violation of Title VII, 42 U.S.C. § 2000e-3(a), and the PHRA, 43
Pa. Cons. Stat. § 955(d).  Title VII and the PHRA make it
unlawful for an employer to discriminate against an employee who
has opposed practices made illegal by Title VII or the PHRA, or
because he participated in an investigation or proceeding under
those statutes.[4]  Id.  Claims of unlawful retaliation under Title
VII are analyzed under the burden-shifting paradigm established
in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).
Under that standard, to succeed on his claim of unlawful
retaliation, Plaintiff must first demonstrate: (1) he engaged in
an activity protected by Title VII; (2) after or contemporaneous
with engaging in that conduct, his employer took an adverse
action against him; (3) the adverse action was "materially
adverse"; and (4) a causal link exists between his participation
in the protected activity and the employer's adverse action.  See
Hare v. Potter, 220 Fed. Appx. 120, 127 (3d Cir. 2007)(citing

_____

     [4] We reiterate that our analysis for Plaintiff's retaliation claim under
the PHRA will be the same as it would be for the Title VII retaliation claim.
Thus, though we specifically address Title VII here, our conclusions apply
equally to the PHRA claim.

<u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 126 S. Ct. 2405, 2415 (2006)).  To satisfy the third, "material adversity," prong, Plaintiff must prove that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  <u>Id.</u> at 128.  If Plaintiff establishes a prima facie case of retaliation, the burden shifts to Defendant to advance a legitimate, nonretaliatory or nondiscriminatory reason for its actions.  <u>Id.</u> at 127.  If Defendant has done so, the burden shifts back to Plaintiff to prove that the nonretaliatory or nondiscriminatory reason is merely a pretext for discrimination.  <u>Id.</u>

Defendant argues that Plaintiff has not made out a prima facie case of unlawful retaliation because he has not produced any evidence showing that a causal link existed between his complaints and the write-ups.  We agree.  In determining whether Plaintiff has met the causation element of the prima facie case, we consider all evidence that is "potentially probative of causation."  <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 279 (3d Cir. 2000).  Temporal proximity between the protected activity and the employer action may indicate causation, but "the mere fact that adverse employer action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events."  <u>Krouse</u>

16

v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir.

1997)(quoting Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d

Cir. 1997)).  Rather, in cases where temporal proximity is not

"unusually suggestive" of retaliatory motive, the Third Circuit

has demanded further evidence to substantiate a causal

connection.  See Thomas v. Town of Hammonton, 351 F.3d 108, 114

(3d Cir. 2003)(where "the temporal proximity is not so close as

to be unduly suggestive . . . timing plus other evidence may be

an appropriate test"); Farrell, 206 F.3d at 280; Krouse, 126 F.3d

at 503; cf. Jalil v. Avdel Corp., 873 F.2d 701 (3d Cir. 1989)

(finding that plaintiff established causation on retaliation

claim merely by showing that discharge occurred just two days

after filing of complaint).  Such other evidence may include, but

is not limited to, a "pattern of antagonism" by the employer that

could link the adverse action with Plaintiff's complaint.  See

Farrell, 206 F.3d at 280; Krouse, 126 F.3d at 503-04; Woodson v.

Scott Paper Co., 109 F.3d 913, 921 (3d Cir. 1997).

Defendant's disability benefits were suspended on November

30, 2003, when UPS managers were informed that he had been

working for another employer during his period of disability.

This disruption in his benefits came more than one month after

his initial PHRC complaint was filed on October 23, 2003.

Plaintiff has submitted no evidence to support his argument that

17

this time frame is "obviously" suggestive of retaliation, and thus there is nothing to establish a causal link between the two events.  Furthermore, there is no evidence that the UPS managers involved in the decision to disrupt Plaintiff's benefits based on his other employment status were involved in, or even had any knowledge of, the traffic cone incident.  Similarly, a member of the team that investigated the traffic cone incident testified in her deposition that she was not aware that Plaintiff had other employment and was not involved in that investigation at all. (D. Mot. Ex. C, at 58:16).  There is simply no evidence in the record that would lead a reasonable juror to find that a causal connection existed between Plaintiff's initial complaint and the disruption in his benefits five weeks later.

Furthermore, even if Plaintiff could establish a prima facie case - and we reiterate that he has not even come close to doing so - Defendant has proffered a legitimate justification for its actions to which Plaintiff has not responded with any evidence showing that it is pretextual.  Under the terms of the UPS Benefits Plan, employees receiving disability benefits are obligated to notify the insurance carrier if they receive income from sources other than UPS.  If an employee were to receive income from other sources, this would entitle UPS to reduce the amount of benefits it provides to that employee.  Plaintiff

18

admits that he told his supervisor, Mr. Fiorentino, that he had been working for Hertz, and Mr. Fiorentino testified that he passed that information along to the appropriate UPS managers. That the company abided by the terms of its written benefits plan is a legitimate, non-discriminatory reason for disrupting benefits for a period sufficient to determine Plaintiff's employment status with Hertz.  Plaintiff has not responded with any evidence showing that this explanation was mere pretext for discrimination or retaliation, and there is similarly no evidence indicating that the Benefits Plan was administered differently to other UPS employees.  Thus, Plaintiff has failed to carry his burden under the McDonnell-Douglas burden shifting standard.

Accordingly, because he has failed to submit sufficient evidence that there was a causal link between his PHRC complaint and his benefits disruption, or that UPS's legitimate, nondiscriminatory reason for the action was mere pretext, Plaintiff has failed to carry his burden under Title VII and McDonnell-Douglas.  We must therefore enter judgment in favor of Defendant on this claim.  Defendant's Motion for Summary Judgment as to Plaintiff's claim of retaliation under Title VII is GRANTED.

C.  "Violation of Contract" Claim

Finally, Count Three of Plaintiff's complaint alleges that Defendant "violated various terms of the contract of employment which plaintiff had with defendant, UPS."  Plaintiff was an at-will employee and admitted in his deposition that he did not sign a written contract with UPS.  Under Pennsylvania law, there is thus no contract to be "violated," as there was not clear intent by both parties to eliminate his "at will" status.  See Martin v. Capital Cities Media, Inc., 511 A.2d 830 (Pa. Super. Ct. 1986). Nevertheless, Plaintiff argues, a unilateral contract existed because of his reliance on UPS's policy handbooks, and Defendant breached that contract by failing to enforce the provisions of those books.

As an initial matter, Plaintiff has not even bothered to point to a single specific provision in any UPS handbook that has been violated, and vaguely asserts that UPS's response to the traffic cone incident was inadequate under its "written policies and statements."  We must admit that we are unclear how to evaluate the legal merits of a breach of contract claim when no allegedly-violated terms have been pointed out.  Fortunately, though, we need not undergo that futile exercise, because the UPS handbook did not constitute a contract under which Plaintiff has legal rights.  Pennsylvania courts have explained how to approach contract claims based on an employee handbook:

A handbook is enforceable against an employer if a
reasonable person in the employee's position would
interpret its provisions as evidencing the employer's
intent to supplant the at-will rule and be bound
legally by its representations in the handbook.  The
handbook must contain a clear indication that the
employer intended to overcome the at-will presumption.
. . .[I]t is for the court to interpret the handbook to
discern whether it contains evidence of the employer's
intention to be bound legally.

Bauer v. Pottsville Area Emergency Med. Servs., Inc., 758 A.2d
1265, 1269 (Pa. Super. 2000).  Plaintiff does not even attempt an
argument as to how the UPS Policy Book or Code of Business
Conduct express a "clear indication" of intent to overcome
Plaintiff's at-will status.  Perhaps Plaintiff realizes the
futility of such an argument, as the UPS handbooks specifically
disclaim any contractual relationship, clearly stating "This
particular code or policy handbook is not an expressed or implied
contract of employment and does not create any contractual rights
of any kind between UPS and its employees."  (D. Mot. Ex. G).  A
reasonable person in Plaintiff's situation faced with such a
specific disclaimer would not believe UPS intended to remove his
at-will status.  Accordingly, Plaintiff has no contractual rights
based on the UPS employee handbooks, and his "violation of

contract" claim must be dismissed.  Defendant's Motion for
Summary Judgment on this claim must also be GRANTED.


D.  Conclusion

Plaintiff has failed to show that the harassment alleged
here was severe or pervasive, or that there is a basis for
imposing liability on his former employer, and thus has failed to
make out a prima facie hostile environment case under Title VII
and the PHRA.  He has also failed to produce any evidence
supporting a causal connection between any protected activity and
the temporary denial of his disability benefits, and thus has not
made out a prima face case of unlawful discrimination under Title
VII.  Finally, Plaintiff was an at-will employee who did not have
a contract with Defendant under which he could sue for violation
of the UPS employee handbooks.  Accordingly, because no
reasonable juror could find in his favor on any of Plaintiff's
claims, all of those claims must be DISMISSED.[5]

An order follows.

---

[5] Plaintiff's complaint alleged that Defendant's conduct amounted to a
violation of Section 1983.  Clearly, that provision is not applicable because
no state actor is involved.  However, to the extent that Plaintiff actually
meant to allege a violation of Section *1981* for a hostile work environment,
that claim would be analyzed under the same framework as Title VII and thus
must also be dismissed.  See Jones v. R.R. Donnelly & Sons Co., 541 U.S. 369
(2004).

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
TONY RANDOLPH MCCLOUD,              :
                                    :
              Plaintiff,            :    CIVIL ACTION
                                    :
     v.                             :    No. 07-cv-0344
                                    :
UNITED PARCEL SERVICE, INC.,        :
                                    :
              Defendant.            :
```

<u>ORDER</u>

AND NOW, this    11th    day of February, 2008, upon
consideration of Defendant's Motion for Summary Judgment (Doc.
No. 15), and responses thereto, it is hereby ORDERED that the
Motion is GRANTED.  Judgment as a matter of law is ENTERED in
favor of Defendant United Parcel Service, Inc. (UPS) and all of
Plaintiff's claims against Defendant UPS are hereby DISMISSED.

BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER, J.